PER CURIAM
*281 Latasha Johnson appeals a judgment entered in favor of Kohner Properties, Inc., in a rent-and-possession action. She argues the circuit court erroneously barred her from asserting the implied warranty of habitability as an affirmative defense and counterclaim because she remained in possession of the premises without depositing her unpaid rent to the circuit court in custodia legis , which is "traditionally used in reference to property taken into the court's charge during pending litigation over it." Black's Law Dictionary 885 (10th ed. 2014). The circuit court's judgment is affirmed.
Factual and Procedural History
Johnson entered into a written lease agreement with Kohner to rent an apartment. The lease required Johnson to pay monthly rent. During her tenancy, the ceiling above the shower in the bathroom collapsed as a result of a water leak in the unit above Johnson's apartment. Kohner attempted to repair the leak and placed a tarp or trash bag over the hole in the ceiling, but the leak persisted. As a result of the damage, Johnson stayed at a hotel at her own expense to use the shower. The circuit court found the parties offered conflicting testimony as to whether Johnson allowed Kohner access to the premises to repair the ceiling and broken floor tiles. Johnson withheld two months-worth of rent.
Kohner filed an action against Johnson seeking unpaid rent and possession of the apartment. Johnson filed an answer and raised an affirmative defense and counterclaim alleging Kohner had breached the implied warranty of habitability. At trial, and prior to opening statements, Kohner verbally moved to bar Johnson's affirmative defense and counterclaim because she remained in possession of the apartment but had failed to deposit her unpaid rent to the circuit court in custodia legis. After hearing argument, the circuit court overruled Kohner's motion, explaining:
Inasmuch as the Court has not received any evidence at this juncture as to what the circumstances are regarding this tenancy and has no information at this time as to the status of the tenant in her claim, so at this point the Court finds-I'm sorry-the Court is going to overrule [Kohner]'s objection and does not consider whatever position [Kohner] has at this juncture. A bar to [Johnson] defending this claim and will take up whether or not the elements of any defense she might have have been substantiated during this trial.
At trial, the parties were permitted to introduce evidence regarding whether Kohner breached the implied warranty of habitability. After trial, the circuit court, upon "careful consideration of the evidence[,]" entered judgment in favor of Kohner. The circuit court found the hole in the ceiling remained covered by plastic and had not been repaired, and water continued to drip from the hole and plastic covering the ceiling into the bath tub below. Nonetheless, the circuit court barred Johnson from asserting her affirmative defense and counterclaim based on the implied warranty of habitability because she "failed to either vacate the premises or tender her rent to the Court in custodia legis as required by" King v. Moorehead , 495 S.W.2d 65, 77 (Mo. App. 1973).
*282 However, the circuit court also found, while Johnson was barred from asserting her affirmative defense and counterclaim, Kohner breached its promise to make repairs under the maintenance clause of the lease agreement and awarded Johnson a set-off for hotel expenses. Accordingly, the circuit court awarded Kohner possession of the apartment along with rent, late fees, attorney fees, and court costs. Johnson appealed, and the court of appeals, after opinion, transferred the case to this Court. Mo. Const. art. V, sec. 10.
Analysis
"On review of a court-tried case, [this C]ourt will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." Sun Aviation v. L-3 Commc'ns Avionics Sys. , 533 S.W.3d 720, 727 (Mo. banc 2017) (citation omitted). Legal questions are reviewed de novo. See, e.g. , Blanchette v. Blanchette , 476 S.W.3d 273, 277-78 (Mo. banc 2015).[1]
I.
Johnson argues the circuit court erroneously barred her from asserting the implied warranty of habitability as an affirmative defense and counterclaim on the basis she failed to either vacate the premises or tender her rent to the court in custodia legis.
The circuit court relied on King in barring her from asserting a breach of the implied warranty of habitability. In King , a landlord sued a tenant for rent and possession. 495 S.W.2d at 67. The tenant lost in the magistrate court and vacated the premises before appealing to the circuit court. Id. The tenant asserted, as an affirmative defense, that the landlord breached an implied covenant to provide premises in a safe, sanitary, and habitable condition. Id. at 68. The circuit court determined the tenant failed to state a valid defense. Id. The court of appeals reversed, holding the tenant stated a valid defense because all residential leases include an implied warranty of habitability obligating lessors to guarantee the "dwelling is habitable and fit for living at the inception of the term and that it will remain so during the entire term." Id. at 75.
Because a landlord is obligated to provide a habitable dwelling, a breach of the warranty "justifies retention of possession by the tenant and withholding of rent until habitability has been restored." Id. at 77. The court of appeals in King concluded its analysis of the implied warranty of habitability by stating, "A tenant who retains possession ... shall be required to deposit the rent as it becomes due, in custodia legis pending the litigation." Id. It explained, "This procedure assures the landlord that those rents adjudicated for distribution to him will be available to correct the defects in habitability, and will also encourage the landlord to minimize the tenant's damages by making tenantable repairs at the earliest time." Id.
*283 The court of appeals' discussion of the in custodia legis procedure in King was unnecessary to resolve the case. Because the tenant in King had already vacated the premises, the in custodia legis procedure, which applies when a tenant retains possession of the property, did not pertain to the tenant in King . Therefore, the discussion in King , imposing the in custodia legis procedure in all rent and possession actions when the tenant retains possession of the premises and alleges the landlord breached the implied warranty of habitability, was not necessary to resolve King and could be accurately characterized as dicta.
Even if King 's pronouncement of an in custodia legis procedure was dicta , it is undisputed that the legal pronouncement in King has been dutifully followed by our circuit courts for almost five decades in the absence of contrary guidance from this Court or the Missouri General Assembly. See, e.g. , 36 Jane Pansing Brown, Missouri Practice Series: Landlord-Tenant Handbook §§ 1:1, 23:8 (2017); 18A Timothy J. Tryniecki, Missouri Practice Series: Real Estate Law § 52:18 (3d ed. 2006). Moreover, since King , the in custodia legis procedure has been discussed in at least two reported decisions by the court of appeals: Tower Management, Inc. v. Henry , 687 S.W.2d 564 (Mo. App. W.D. 1984), and Wulff v. Washington , 631 S.W.2d 109 (Mo. App. W.D. 1982). As in King , however, the tenant in Wulff vacated the premises, 631 S.W.2d at 109-10, and, therefore, any discussion of an in custodia legis procedure in Wulff is, likewise, dicta. And in Henry , the tenants retained possession, but did not deposit their rent to the circuit court in custodia legis. 687 S.W.2d at 565-66.[2]
Until now, this Court has never been required to examine King 's pronouncement of an in custodia legis procedure in all rent and possession actions when the tenant remains in possession. In Detling v. Edelbrock , in which this Court recognized an implied warranty of habitability, most of the tenants had vacated the premises. 671 S.W.2d 265, 267, 270 (Mo. banc 1984), abrogated on other grounds by Heins Implement Co. v. Mo. Highway & Transp. Comm'n , 859 S.W.2d 681, 684 n.2 (Mo. banc 1993). Therefore, this Court did not address whether the tenants asserting a breach of the implied warranty of habitability were required to deposit rent payments with the circuit court.
II.
The "majority of the courts which permit rent withholding" leave the imposition of an in custodia legis procedure to the sound discretion of the trial court. Restatement (Second) of Prop.: Landlord & Tenant § 11.3, at 377 (Am. Law Inst. 1977); see also Teller v. McCoy , 162 W.Va. 367, 253 S.E.2d 114, 129 (1978) ("[S]everal courts have held that the trial court, upon request, after determining that a fact questions [sic] exists as to a breach of warranty of habitability, may , during the pendency of the action, require the tenant in possession to make future rent payments or part thereof unto the court as they become due.") (emphasis added); Robert S. Schoshinski, American Law of *284 Landlord and Tenant § 6:15.10, at 507, 510-11 (Supp. 2018) (collecting numerous cases in which trial courts "without statutory authorization" have the discretion to impose an in custodia legis procedure).
For instance, the illustrious Judge J. Skelly Wright, writing for a unanimous court in Javins v. First National Realty Corp. , weighed in on the in custodia legis procedure:
Appellants in the present cases offered to pay rent into the registry of the court during the present action. We think this is an excellent protective procedure. If the tenant defends against an action for possession on the basis of breach of the landlord's warranty of habitability, the trial court may require the tenant to make future rent payments into the registry of the court as they become due; such a procedure would be appropriate only while the tenant remains in possession. The escrowed money will, however, represent rent for the period between the time the landlord files suit and the time the case comes to trial. In the normal course of litigation, the only factual question at trial would be the condition of the apartment during the time the landlord alleged rent was due and not paid.
As a general rule, the escrowed money should be apportioned between the landlord and the tenant after trial on the basis of the finding of rent actually due for the period at issue in the suit. To insure fair apportionment, however, we think either party should be permitted to amend its complaint or answer at any time before trial, to allege a change in the condition of the apartment. In this event, the finder of fact should make a separate finding as to the condition of the apartment at the time at which the amendment was filed. This new finding will have no effect upon the original action; it will only affect the distribution of the escrowed rent paid after the filing of the amendment.
428 F.2d 1071, 1083 n.67 (D.C. Cir. 1970) (emphasis added). Similarly, a California court of appeal echoed Javins ' support for an in custodia legis procedure in some cases, explaining:
If the tenant claims that all or a part of the rent is not due because of defects in the premises, the trial court may, during the pendency of the action and at the request of either party, require the tenant to make the rental payments at the contract rate into court as they become due for as long as the tenant remains in possession. At the trial of the action the court can then determine how the rent paid into court should be distributed.
Hinson v. Delis , 26 Cal.App.3d 62, 102 Cal.Rptr. 661, 666 (Ct. App. 1972), disapproved of on other grounds by Knight v. Hallsthammar , 29 Cal.3d 46, 171 Cal.Rptr. 707, 623 P.2d 268, 273 n.7 (1981) (emphasis added). The Supreme Court of California sanctioned Hinson 'sin custodia legis procedure, calling it "a fair means of protection of landlords from potential abuses of the proposed warranty of habitability defense." Green v. Superior Court , 10 Cal.3d 616, 111 Cal.Rptr. 704, 517 P.2d 1168, 1182 (1974). Moreover, this "sound procedural safeguard[ ] suffice[s] to protect the landlord's economic interests without depriving the tenant of a meaningful opportunity to raise the breach of warranty issue." Id. Notably, the court of appeals in King cited to both Javins and Hinson in support of an in custodia legis procedure. King , 495 S.W.2d at 77.
Furthermore, the Supreme Court of Pennsylvania recognized a trial court is in the best position to determine whether an in custodia legis procedure is appropriate in a given case, explaining:
*285 [T]he decision whether a tenant should deposit all or some of the unpaid rents into escrow should lie in the sound discretion of the trial judge or magistrate. The tenant may retain his rent, subject to the court's discretionary power to order him, following a hearing on the petition of the landlord or tenant, to deposit all or some of the rent with the court or a receiver appointed by the court.
Pugh v. Holmes , 486 Pa. 272, 405 A.2d 897, 907 (1979). Likewise, the Supreme Court of Minnesota explained:
[O]nce the trial court has determined that a fact question exists as to the breach of the covenants of habitability, that court will order the tenant to pay the rent to be withheld from the landlord into court ... and that until final resolution on the merits, any future rent withheld shall also be paid into court. The court under its inherent powers may order payment of amounts out of this fund to enable the landlord to make repairs or meet his obligations on the property or for other appropriate purposes. In the majority of cases, final determination of the action will be made quickly and this procedure will not have to be used. It is anticipated that the trial court, in lieu of ordering the rent paid into court, in the exercise of its discretion may order that it be deposited in escrow subject to appropriate terms and conditions or, in lieu of the payment of rents, may require adequate security therefor if such a procedure is more suitable under the circumstances.
Fritz v. Warthen , 213 N.W.2d 339, 343 (1973) (footnote omitted).
Consistent with the prevailing view of a majority of jurisdictions, this Court holds circuit courts may exercise discretion on a case-by-case basis to determine whether an in custodia legis procedure is appropriate in a particular case. See Unif. Residential Landlord & Tenant Act § 4.105(a) (Unif. Law Comm'n 1972) (amended 1974) (revised 2015) ("[T]he court from time to time may order the tenant to pay into court all or part of the rent accrued and thereafter accruing, and shall determine the amount due to each party.") (emphasis added). A circuit court is in the best position to assess the merits of each case and the parties' respective positions, and is in the best position to accommodate "the competing interests of the parties in affording necessary and fair protection to both parties." Eli Haddad Corp. v. Cal Redmond Studio , 102 A.D.2d 730, 476 N.Y.S.2d 864, 865-66 (1984) ; see also Unif. Residential Landlord & Tenant Act § 4.105 cmt. ("It is anticipated that upon filing of the counterclaim the court will enter the order deemed appropriate by him concerning the payment of rent in order to protect the interests of the parties.").
This practice "is said to derive from a trial court's general equitable powers to protect a landlord from the potential loss of income from his property during a prolonged period of litigation." Schoshinski, supra , at 507; see also id. (noting trial courts may impose an in custodia legis procedure "without statutory authorization"). The in custodia legis procedure merely "preserves the status quo until a final judgment is rendered." MMB Assocs. v. Dayan , 169 A.D.2d 422, 564 N.Y.S.2d 146, 147 (1991). "The tenant pays rent into escrow at the discretion of the court, which apportions the escrowed money between the landlord and tenant after final judgment." Restatement (Second) of Prop., supra , at 381. No one, including the trial court, may "invade escrow accounts before final judgment without the consent of the *286 parties." Teller , 253 S.E.2d at 130.[3] Without an in custodia legis procedure available to the trial court,
the tenant remains in occupancy without making any payments for this protracted period, with little or no assurance that any deficiencies will be collected at the conclusion of the litigation should the landlord prevail on the merits. Payments into court thus provide this assurance-if the rent or any portion of it is finally determined to be due, the escrowed fund is available for its payment.
Schoshinski, supra , at 508. Moreover,
if the tenant is withholding all the rent, the landlord runs the risk that the tenant may ultimately be unwilling or unable to pay the amount found by the court to be due and owing. Hence the court may, in appropriate cases, enter a "protective order" requiring the tenant to pay all or part of the rent claimed into court until it is finally determined whether there is a breach of the implied or statutory warranty and, if so, how large an abatement of rent the court should grant.
Roger A. Cunningham et al., The Law of Property 340-41 (2d ed. 1993).
In sum, even though King 's pronouncement of an in custodia legis procedure in all rent and possession actions when the tenant retains possession was dicta , the circuit courts have the discretion to institute a suitable protective procedure upon either party's request and after notice and an opportunity to be heard by the opposing party. See Unif. Residential Landlord & Tenant Act § 408(b) & cmt. (expanding upon § 4.105 and stating, "[i]f a tenant is in possession of the dwelling unit when the landlord files an action based on nonpayment of rent, either party may seek a court order directing the tenant to pay all or part of the unpaid rent and all additional rent as it accrues into an escrow account with the court"). It should be emphasized, however, that King 's pronouncement of an in custodia legis procedure had been in place for almost five decades, and, therefore, constituted the status quo in Missouri. For this reason, and given the absence of contrary authority from this Court or contrary legislation from the General Assembly, the circuit court in this case cannot be faulted for relying on King when it barred Johnson's affirmative defense and counterclaim.[4]
*287 Accordingly, it did not erroneously declare or apply the law at the time it entered its judgment.[5]
Conclusion
The circuit court's judgment is affirmed.
Fischer, C.J., Wilson and Russell, JJ., concur;
Breckenridge, J., dissents in separate opinion filed;
Stith, J., concurs in opinion of Breckenridge, J.
Draper and Powell, JJ., not participating.
DISSENTING OPINION
Patricia Breckenridge, judge
I respectfully dissent. The circuit court relied on King v. Moorehead , 495 S.W.2d 65 (Mo. App. 1973), in barring Latasha Johnson from asserting a breach of the implied warranty of habitability. But the in custodia legis procedure discussed in King was simply dicta. The principal opinion reasons it is immaterial that the in custodia legis procedure in King is dicta because such dicta has been "dutifully followed by our circuit courts for almost five decades." An examination of Missouri case law, however, reflects only one case in which application of the in custodia legis procedure discussed in King was necessary for the resolution of the case for tenants remaining in possession of the rented property.[1] See Tower Mgmt. Inc. v. Henry , 687 S.W.2d 564, 565-66 (Mo. App. W.D. 1984).
More importantly, an examination of the in custodia legis procedure espoused in King reveals its origin is not rooted in application of common law principles. Rather, the recognition of an implied warranty of habitability marked a change from Missouri's previous application of caveat *288 emptor. King , 495 S.W.2d at 69. In recognizing the implied warranty of habitability, Missouri courts acknowledged a shift in the common law from a landlord's unfettered right to rent and possession toward recognition of a bilateral contract in which the tenant's obligation to pay rent is dependent on the landlord's performance of the obligation to provide a habitable dwelling. Id. It is not surprising, therefore, that, in the course of that transition, the court of appeals discussed the in custodia legis procedure, which undoubtedly reserved some remnants of protection for the landlord. But the fact remains such a procedure had no basis in present property law or contract principles.
Furthermore, despite the principal opinion's finding to the contrary, the in custodia legis procedure is not necessary to safeguard landlords' property interests when a tenant asserts a breach of the implied warranty of habitability. A landlord suffers no detriment from assertion of the defense in the absence of an in custodia legis requirement because a landlord is not otherwise entitled to recover rent or possession prior to a favorable adjudication of the landlord's rent and possession claim. Therefore, requiring tenants to deposit with the court the rent as it becomes due places landlords in a better position than they would be if tenants did not assert an implied warranty of habitability defense.
The principal opinion finds the in custodia legis procedure "preserves the status quo" and "is not a windfall to landlords." But requiring a tenant to deposit rent as it comes due prior to adjudication of a landlord's claim for rent and possession is a financial prerequisite to a tenant's access to the courts to present a claim or defense of a breach of the implied warranty of habitability. And the principal opinion cannot cite to any other action-based in either property or contract-requiring the disputed amount to be paid into the court as a precondition to asserting a defense or raising a claim.
Moreover, such findings ignore the disparity between tenants and landlords that often exists in situations in which the implied warranty of habitability is being asserted and overlook the likelihood that requiring payment of rent as it becomes due acts as a deterrent to tenants wishing to assert the defense. Therefore, in practice, the in custodia legis procedure revives the constructive eviction doctrine the implied warranty of habitability was designed to replace. Accordingly, I am not persuaded that an in custodia legis requirement is a necessary procedural safeguard in rent and possession actions.
Finally, even if I agreed the discretionary in custodia legis procedure adopted by the principal opinion were appropriate, that would not justify affirming the circuit court's judgment in this case. Rather, the record makes clear the circuit court perceived the in custodia legis procedure to be mandatory, not discretionary, when it barred Ms. Johnson from asserting a breach of the implied warranty of habitability. Ms. Johnson should be afforded the same opportunity for the circuit court to exercise its discretion in this case as tenants in rent and possession cases will have going forward. Accordingly, I would reverse the circuit court's judgment.

It is unclear whether Johnson is claiming the circuit court erroneously declared the law or erroneously applied the law. "[A]llegations of error not briefed or not properly briefed shall not be considered in any civil appeal." Rule 84.13(a). Nowhere in her substitute brief does Johnson expressly say the circuit court erroneously declared or applied the law. This alone suggests Johnson's contention against the in custodia legis procedure is "technically deficient" and thus not preserved for review in this Court. Wilkerson v. Prelutsky , 943 S.W.2d 643, 647 (Mo. banc 1997). But this Court may "treat the point as preserved for appellate review" if it "provides sufficient notice to the parties and to this Court as to the issues presented on appeal." Id. Here, the Court is on notice of the issue presented on appeal and the briefing suggests Kohner is on notice as well.

The dissenting opinion states there has been "only one case in which application of the in custodia legis procedure discussed in King was necessary for the resolution of the case for tenants remaining in possession of the rented property[,]" citing Henry . Although Henry is the only reported Missouri appellate case to sanction King 's pronouncement of an in custodia legis procedure, the dissenting opinion fails to account for the numerous circuit courts, like the circuit court in this case, that have applied an in custodia legis procedure after King .

Contrary to the dissenting opinion's assertion that an in custodia legis procedure "places landlords in a better position than they would be if tenants did not assert an implied warranty of habitability defense[,]" permitting the circuit courts the discretion to implement or not implement a procedure that merely "preserves the status quo until a final judgment is rendered[,]" Dayan , 564 N.Y.S.2d at 147, is not a windfall to landlords. Indeed, no one, including the circuit court, may "invade escrow accounts before final judgment without the consent of the parties." Teller , 253 S.E.2d at 130. This is consistent with the dissenting opinion's own assertion that a landlord is not "entitled to recover rent or possession prior to a favorable adjudication of the landlord's rent and possession claim."

In resolving this case, this Court recognizes "the time-honored principle of separation of powers and the recognition that policy decisions such as [those] presented in this case are within the" province of the General Assembly. Goerlitz v. City of Maryville , 333 S.W.3d 450, 456 (Mo. banc 2011). Regardless of the outcome in this case, the General Assembly could enact legislation codifying the approach taken in this case, i.e., allowing our circuit courts to exercise their sound discretion to impose an in custodia legis procedure on a case-by-case basis. Or it could enact legislation adopting King 'sdicta imposing an in custodia legis procedure in all rent and possession actions when the tenant remains in possession of the premises. This has been the unchallenged and unquestioned process in place for almost five decades and constitutes the status quo in Missouri. Or it could enact legislation adopting the dissenting opinion's approach, which would prohibit an in custodia legis procedure in all cases. In any event, the General Assembly is perfectly capable of enacting laws it perceives reflect sound policy that best serve all Missourians.

To the extent Johnson argues upholding the circuit court's imposition of an in custodia legis procedure in this case violates article I, section 14, of the Missouri Constitution, she: failed to raise an open courts violation before the circuit court even though she could have, Rule 78.07(b); failed to file an after-trial motion raising such a violation, id. ; and failed to raise a point relied on regarding such a violation in her brief filed in the court of appeals. Accordingly, such a contention is not preserved for review in this Court. See, e.g. , J.A.R. v. D.G.R. , 426 S.W.3d 624, 629 (Mo. banc 2014) ; Brown v. Brown , 423 S.W.3d 784, 788 & n.5 (Mo. banc 2014) (per curiam); St. Louis Cty. v. Prestige Travel , 344 S.W.3d 708, 712-13 (Mo. banc 2011). Indeed, this Court "will avoid deciding a constitutional question if the case can be resolved fully without reaching it." Lang v. Goldsworthy , 470 S.W.3d 748, 751 (Mo. banc 2015).

The principal opinion states "numerous circuit courts" have applied the in custodia legis procedure under "appropriate circumstances." The only authority supporting such conclusion is secondary authority that, once again, relies on the dicta in King . See 36 Jane Pansing Brown, Missouri Practice Series: Landlord-Tenant Handbook §§ 1:1, 23:8 (2017); 18A Timothy J. Tryniecki, Missouri Practice Series: Real Estate Law § 52:18 (3d ed. 2006). Those secondary sources do not establish circuit courts have been dutifully applying in custodia legis procedures or whether such procedures have been applied under the appropriate circumstances. Furthermore, even if circuit courts have been relying on the dicta in King and these secondary sources, they state application of the in custodia legis procedure is mandatory for tenants remaining in possession of the property. See King , 495 S.W.2d at 77 ; 36 Jane Pansing Brown, Missouri Practice Series: Landlord-Tenant Handbook §§ 1:1, 23:8 (2017). This differs significantly from the discretionary approach the principal opinion adopts going forward.