

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| **DONZELL WALKER,** | ) | |
| | ) | **WD82533** |
| Appellant, | ) | |
| v. | ) | **OPINION FILED:** |
| | ) | |
| **DIVISION OF EMPLOYMENT** | ) | **January 7, 2020** |
| **SECURITY,** | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**Appeal from the Labor and Industrial Relations Commission**

**Before Division Two:  Thomas H. Newton, P.J.,
Anthony Rex Gabbert, and Thomas N. Chapman, JJ.**

Donzell Walker appeals the decision of the Labor and Industrial Relations Commission dismissing his claim for unemployment benefits.  The Commission determined that Mr. Walker failed to demonstrate good cause for failing to participate in a hearing.  The appeal is dismissed.

## Factual and Procedural History

Mr. Walker worked for City Wide Maintenance (Employer), and was terminated for directing profanity at his supervisor during a telephone conversation (where his absence from work was being discussed).  Mr. Walker filed a claim for unemployment compensation benefits.  A Deputy of the Division of Employment Security (Division) found Mr. Walker ineligible to receive unemployment insurance

benefits. Mr. Walker appealed that decision, and was mailed a notice of the hearing before the Appeals Tribunal, on November 5, 2018, at 12:30 pm. Mr. Walker failed to call in, and his appeal was dismissed. He requested a new hearing, which was conducted. At that hearing Mr. Walker acknowledged that the address where the notice was sent was correct, that he had received the notice for the 12:30 pm hearing, and that he did not participate in the hearing. He testified that he received notice of another hearing (regarding his ability to work) for that same date, set at 1:15 pm, and that he did call in for that hearing. When asked why he didn't participate in the 12:30 pm hearing, he testified as follows:

Q: All right. Why didn't you call in for that hearing?

A: Because, uh, I deal with – I was confused about the, uh, the first package or the second package which I had called in at 12:30 but the one prior to that, I believe it was 1:15 I mean. I didn't – I called in at 1:15 but I didn't call in at 12:30 because I was confused and I deal with a mental illness and I just – I got overwhelmed. This is my first time, uh, going through, uh, appeals or trying to get unemployment so I was just confused and it – it – it – it – I couldn't understand what I needed – what I needed to do….

* * *

Q: Okay. So – so I just want to be clear and I believe we asked this but I wasn't – I wasn't sure I understood it. When – when you received all the documents in the mail for the two hearings, uh, on – on November 5th, did you notice that they – they were two different notices with two different times?

A: No, sir. I – I only read, uh, the one at 1:15 and I made sure that I called in that day because that's the only one. I—I—I reckon I missed – I reckon the other one at 12:30…

In its decision dismissing Mr. Walker's claim, the Commission found that, when he received the two notices, Mr. Walker "only read the notice for the 1:15 pm hearing." The Commission further found that Mr. Walker "suffers from a mental

2

health issue…that sometimes causes him confusion. The claimant did not present any medical evidence regarding his condition." In its conclusions of law, the Commission found as follows:

> The claimant did not demonstrate good cause for failing to participate (sic) the previous hearing. The claimant failed to participate because he did not read the notices provided to him….The claimant's failure to review the documents provided to him does not constitute good cause. The claimant did not demonstrate reasonableness and good cause under the circumstances.
>
> The claimant failed to provide any competent evidence to show that his mental health issues caused him to miss the hearing. The claimant admitted he had not read the notice. It was the claimant's failure to read the notice, not any confusion, which prevented him from participating in the hearing…."

In its decision, the Commission concluded: "Good Cause has not been shown for failing to participate in the prior hearing….The claimant's appeal is dismissed." This appeal by Mr. Walker followed.

## Dismissal of Appeal

In his sole point on appeal, Mr. Walker contends that the Commission erred in finding him disqualified for unemployment benefits based on his discharge for misconduct connected with work. Because Mr. Walker does not properly appeal the only ruling made by the Commission (that he had failed to demonstrate good cause for failure to participate) and he does not comply with the briefing requirements of Rule 84.04 for the good cause issue, the appeal is dismissed.

Rule 84.13(a) provides that "allegations of error not briefed or not properly briefed shall not be considered in any civil appeal." Rather than addressing the Commission's decision to dismiss appeal of his claim, Mr. Walker's sole point on

3

appeal addresses the merits of his claim.[1]  While Mr. Walker does discuss the reasons he missed the hearing in his one-paragraph conclusion, he does not even mention the phrase "good cause" in his brief.[2]  A question not presented in an appellant's brief will be considered abandoned on appeal.  *Stanton v. Div. of Emp't Sec.*, 321 S.W.3d 486, 488 (Mo. App. W.D. 2010).

In *Stanton*, the appellant's claim for unemployment compensation benefits was dismissed by the Commission due to his failure to call in and participate in the hearing before the Appeals Tribunal; and the appellant, like Mr. Walker, challenged the merits of the claim on appeal, rather than the dismissal for failure to participate. *Id.* at 487-88.  In dismissing the appeal in *Stanton*, we observed:

> Our review is confined to those points of error that the appellant properly raises on appeal.  In this case, Stanton has failed to allege any reviewable point of error on the part of the Commission. The Commission's decision upheld the dismissal of Stanton's case. Stanton, however, does not address this issue in his brief.  Rule 84.13(a) provides that allegations of error not briefed or not properly briefed shall not be considered in any civil appeal.  Furthermore, a question not presented in an appellant's brief will be considered abandoned on appeal and no longer an issue in the case.  Because Stanton's appeal does not contest the dismissal of his case for failure to appear at the hearing, he has abandoned that issue.  Having failed to raise the grounds upon which the Commission dismissed his claim, Stanton presents no appealable issue for this court to review.

*Id.* at 488 (internal quotes and citation omitted).

---

[1] Mr. Walker's point on appeal asserts that he engaged in no misconduct, and that he did not violate the employer's code of conduct (policy).  At best, this could be construed to be a challenge to the sufficiency of the evidence of a decision on the merits of his claim, a decision that the Commission did not make.

[2] In order to proceed on the merits, at the rescheduled hearing Mr. Walker carried the burden of proof to first show that he had good cause for his failure to participate in original hearing.  *Hubbard v. Schaefer Autobody Ctrs., Inc.*, 561 S.W.3d 458, 462 (Mo. App. E.D. 2018).  "Good cause" is defined as "those circumstances in which the party acted in good faith and reasonably under all the circumstances."  8 CSR § 10-5.040(2)(B).

4

Furthermore, Mr. Walker fails to comply with the Rule 84.04 briefing requirements for the good cause issue. Rule 84.04 describes mandatory requirements for appellate briefs. *Hubbard v. Schaefer Autobody Ctrs., Inc.*, 561 S.W.3d 458, 460-61 (Mo. App. E.D. 2018).

> In the interest of judicial impartiality, judicial economy and fairness to all parties, *pro se* appellants are held to the same standards as attorneys regarding the mandatory appellate briefing rules. All litigants are required to comply with Rule 84.04; an appellate court should not speculate as to the parameters of the appellant's argument because doing so would cast the court in the role of the appellant's advocate.

*Id.* at 461 (internal citations omitted). "While we prefer to dispose of a case on the merits whenever possible, if the deficiencies in the brief are such that no claims are preserved for appellate review, then we must dismiss the appeal." *Scott. v. Potter. Elec. Signal Co.,* 310 S.W.3d 311, 312 (Mo. App. E.D. 2010).

An appellate brief must contain a "Point Relied On" for each issue on appeal and an argument that substantially follows the corresponding "Point Relied On." *Hubbard*, 561 S.W.3d at 461. Specifically, Mr. Walker's brief fails to comply with Rules 84.04(d)(2) and 84.04(e). Under Rule 84.04(d)(2), "each point relied on must identify the administrative ruling or action the appellant challenges, provide a concise statement of the legal reasons for the claim on appeal, and explain why the legal reasons support the claim of error." *Hubbard*, 561 S.W.3d at 461 (internal quotes and citation omitted). Rule 84.04(e) requires the argument to substantially follow the order of the "Point Relied On." The argument shall include the applicable standard of review. *Id.* Moreover, "[a]ll factual assertions in the argument shall have specific page references to the relevant portion of the record on appeal." *Id.* The argument "should develop the claim of error by showing the interaction between the relevant

5

principles of law and the facts of the particular case." *Hubbard*, 561 S.W.3d at 461 (internal quotes and citation omitted). "Mere conclusions and the failure to develop an argument with support from legal authority preserve nothing for review." *Wallace v. Frazier*, 546 S.W.3d 624, 628 (Mo. App. W.D. 2018) (internal quotes and citation omitted).

Mr. Walker's brief fails to comply with Rule 84.04 in a number of ways. He fails to assert a "Point Relied On" challenging the Commission's decision that he failed to demonstrate good cause for his failure to appear. While he does raise the good cause issue in his conclusion, he makes only conclusory claims not supported by legal argument. He fails to set forth the applicable standard of review for that issue, to present legal authority or argument for reversal, or to cite to specific page references to the relevant portions of the record.[3]

Compliance with the briefing requirements of Rule 84.04 is required to give notice to the other party of the precise matters at issue and to ensure that appellate courts do not become advocates for the appellant by speculating facts and arguments that have not been made. *Thornton v. City of Kirkwood*, 161 S.W.3d 916, 919 (Mo.

---

[3]  Two other problems relate to the preparation and filing of Mr. Walker's briefs.  First, while Mr. Walker signed his appellant's brief, another individual also signed it.  Specifically, after Mr. Walker's signature, the following was set out: "I, Zachary Tyler Newman, am the current Community Specialist for Mr. Donzell Walker, who requires assistance in multiple aspects of his life, included a demonstrated inability to read paperwork and interpret it for himself" followed by Mr. Newman's signature and contact information at Swope Health Services.  It is unclear if Mr. Newman wrote Mr. Walker's brief.  While Rule 5.29(b), governing the unauthorized practice of law, allows an individual party to be represented by a duly authorized agent in any employment security proceeding before the state division of employment security, it does not provide such in this court.

Additionally, a second individual, Edward L. Speed, apparently wrote the "Appellant's Friend of Court Reply Brief."  The court's local Rule 26 allows amicus curiae briefs to be filed in cases but "only with the consent of the parties or upon order of the Court."  Amicus curiae briefs "shall conform to Rules 84.04 and 84.06."  *Id.*  This purported Friend of Court brief was not filed with the consent of the parties or upon order of this court and should be ignored.  Furthermore, it does not comply with Rule 84.04.

6

App. E.D. 2005). In *Hampton v. Davenport*, 86 S.W.3d 494, 496 (Mo. App. S.D. 2002), the Southern District of our court dismissed an appeal for briefing deficiencies, noting the importance of giving the court and other parties notice of the issues on appeal:

> Rule 84.04 mandates what an appellant's brief shall contain. Violations of Rule 84.04 are grounds for a court to dismiss an appeal. Whether an appeal will be dismissed for failure to comply with Rule 84.04 is discretionary. That discretion is generally not exercised unless the deficiency impedes disposition on the merits. A brief impedes disposition on the merits where it is so deficient that it fails to give notice to [the court] and to the other parties as to the issue presented on appeal.

> The garnishee's appellant's brief impedes disposition of the case on its merits. It does not identify any issue that permits meaningful review. It is the appellant's obligation to identify, with particularity, the proposition on which the party relies and to provide accurately referenced authority for the proposition. Likewise, an appellant's obligation includes providing authority in support of alleged trial court errors with accurate citations to that authority. Were the appellate court to undertake these things when an appellant has failed to do them, the appellate court would be assuming the role of advocate. It is not the function of the appellate court to serve as advocate for any party to an appeal.

*Id*. at 496 (internal quotations and citations omitted).

Mr. Walker's brief discussion in his conclusion of the reasons he did not call into the hearing does not adequately identify the proposition on which he relies or provide authority for that proposition to permit meaningful review. Again, Mr. Walker does not even mention the phrase "good cause" in his brief. To engage in a good cause analysis, therefore, would require this court to assume the role of advocate for Mr. Walker on appeal, which we cannot do. Having failed to properly

7

raise or brief the grounds upon which the Commission dismissed his claim, Mr. Walker presents no appealable issue for this court to review.[4]

The appeal is dismissed.

/s/ *Thomas N. Chapman*
Thomas N. Chapman, Judge

Thomas N. Chapman, Judge, writes for the majority. Anthony Rex Gabbert, Judge, concurs. Thomas H. Newton, Presiding Judge, dissents.

---

[4] The Dissenting Opinion concedes that Mr. Walker's briefing was deficient, but nevertheless concludes that, because the Division did address his failure to demonstrate "good cause" in its brief, we should allow his appeal to proceed. Since Walker's sole point on appeal and most of his argument address the merits of his claim (which was not decided), it is not surprising that the Division ignored his arguments and addressed the only issue that actually *was* decided: why the Commission found that Mr. Walker had failed to demonstrate good cause for failing to participate in the hearing. However, the Division did not address the novel legal arguments first posited for Mr. Walker by the Dissent. Even though Mr. Walker bore the burden of proof that he had good cause to have missed the 12:30 pm hearing, *Hubbard*, 561 S.W.3d at 462, even though we are to defer to the Commission on the credibility of witnesses and the weight given to evidence, *Fendler v. Hudson Servs.*, 370 S.W.3d 585, 588 (Mo. banc 2012), and in spite of Mr. Walker's testimony that he received the two notices but "only read…the one [notice] at 1:15", the Dissent indicates that the Commission was nevertheless required to have considered Mr. Walker's self-serving testimony competent evidence that his mental illness caused him to miss the hearing, that the Commission erred in concluding that Mr. Walker failed to demonstrate good cause for having missed the hearing, and that we must conclude (as a matter of law) that he had good cause to have missed the hearing. Neither Mr. Walker nor the Division anticipated this argument, and neither should we. "Were [we] to undertake these things when [Mr. Walker] has failed to do them, [we] would be assuming the role of advocate. 'It is not the function of the appellate court to serve as advocate for any party to an appeal.'" *Hampton*, 86 S.W.3d at 496 (quoting *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978)).



# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

DONZELL WALKER,           )
                                      )
               **Appellant,**      )
    v.                                 )
                                      )
**DIVISION OF EMPLOYMENT**    )
**SECURITY,**                         )
                                      )
              **Respondent.**     )

      **WD82533**

      **FILED:  January 7, 2020**

## DISSENTING OPINION

Mr. Donzell Walker appeals *pro se* a Labor and Industrial Relations Commission's (Commission) decision affirming the dismissal of an appeal for failing to participate in a prior hearing without good cause.  Mr. Walker challenges the ruling, which also effectively denied a request for unemployment compensation benefits, on the ground that his mental illness caused him to miss the hearing.  He further contends that the evidence was insufficient to show that he was discharged from employment for misconduct.  Because I believe that he met his burden of showing good cause to miss the merits hearing, I respectfully dissent.

I agree that Mr. Walker failed to properly brief the good-cause question.  However, the factual recitation contains the following statement:  "Due to Mr. Walkers [sic] diagnoses and trouble with understanding and interpreting paperwork

he became confused and missed one of his previous appointments with the court due to no fault of his own." He also states as part of the argument, "In addition, the appellant's schizophrenia disorder is the cause of him missing his previous appointment." He concludes as follows:

> In this case, the Commission erred in denying unemployment benefits to the appellant for missing a previous telephone hearing. Due to the appellant's mental status he became confused and was unaware of what was required of him, causing him to miss his hearing. The failure to report for the telephone hearing was not at the fault of the appellant, but rather to his inability to interpret the legal information in front of him and due to his documentation proving his mental status and inability to perform certain tasks [sic] he is entitled to his unemployment benefits commencing after his work separation on September 20th, 2018.

Because Mr. Walker did not raise the matter in the point relied on, good cause is not preserved, but this Court may exercise its discretion, *ex gratia*, to consider the argument's merits. *Hoeper v. Liley*, 527 S.W.3d 151, 161 (Mo. App. W.D. 2017). As our supreme court has indicated, we may treat a point "as preserved for appellate review if it provides sufficient notice to the parties and to this Court as to the issues presented on appeal." *Kohner Props., Inc. v. Johnson*, 553 S.W.3d 280, 282 n.1 (Mo. banc 2018) (citation omitted). We are on such notice, and the briefing suggests that the Commission was as well in that it chose to respond, addressed the good-cause issue, and did not challenge Mr. Walker's appeal for a Rule 84.04 violation. "[W]hen possible, this Court's policy is to decide a case on its merits rather than on technical deficiencies in the brief." *Mo. Bankers Ass'n, Inc. v. St. Louis Cty.*, 448 S.W.3d 267, 271 n.5 (Mo. banc 2014) (citation omitted). Accordingly, I would address the good-cause claim on the merits.

City Wide Maintenance Co. (employer) hired Mr. Walker in April 2017 as a janitorial service representative. His supervisor, Mr. Charles Crawford, terminated Mr. Walker's employment on September 20, 2018, allegedly for using profanity in a telephone call to explain a two-day absence from work. A Division of Employment Security deputy determined that Mr. Walker was disqualified from receiving unemployment compensation benefits because he was discharged for misconduct connected to work, that is, he used profanities toward his employer in violation of the employer's code of conduct.[1] Mr. Walker appealed the decision, but failed to call into and participate in the hearing.

Mr. Walker had been sent information about two telephone hearings scheduled for November 5, 2018: one, at 12:30 p.m., was to address the merits of the claim; the second, forty-five minutes later, involved whether he was available and able to work. He testified that inexperience with the unemployment claims process and mental illness—paranoid schizophrenia—caused confusion and anxiety. He testified that, under these circumstances, "[he] really didn't understand what [he] needed—what [he] needed to do." Mr. Walker participated in the 1:15 p.m. hearing. He later explained when testifying about missing the earlier hearing that he had a witness for the 1:15 p.m. hearing, and the referee asked Mr. Walker to step out of the car from which he had called so the witness's testimony could be taken. Then when the referee told him there were no further questions, Mr. Walker wondered why his boss

---

[1] The employer had responded to the claim for benefits with a letter describing the conduct that precipitated the termination and outlining other instances of misconduct, including late arrivals, early departures, absences, and uncooperative behavior that warranted written warnings, a suspension, and a 90-day probationary period. According to the letter, the use of profanities violated the employer's policies of which Mr. Walker was aware. Signed by Mr. Walker in April 2017, part of the policy included treating co-workers and customers "with dignity and respect. That means we do not use words that could be construed as harassing, degrading, or offensive."

3

had not been on the call and why he was not given the opportunity to defend himself in that hearing.  Mr. Walker realized he must have made a mistake and, less than an hour after the 1:15 p.m. hearing, called the Appeals Tribunal to state that he did not know he was supposed to call in for another hearing.

He was asked by a hearing referee whether he had noticed, after he had received all of the documents in the mail for the two hearings, that they were for two different hearings at two different times, Mr. Walker testified, "No sir.  I—I only read, uh, the one at 1:15 and I made sure that I called in that day because that's the only one.  I—I—I reckon I missed—I reckon the—the other one at 12:30."

The Appeals Tribunal dismissed the appeal because of Mr. Walker's failure to appear, and he promptly sought reconsideration.  That request included the following statement:

> On November 5th, 2018 I was scheduled to have a phone interview at 12:3pm [sic].  Due to my condition, I became confused and called at 1;15pm [sic].  I am disabled and have been diagnosed with schizophrenia and also suffer from acute memory loss.  I am currently a client with Swope Health Service located at 3801 Blue Parkway Kansas City, MO.  My case managers [sic] name is Roy Rambo and his contact information is (816) 213-0058.  If you have any questions or need documentation of my diagnosis he will be able to accommodate you with the information that you will need.  I deeply apologize for missing my phone appointed hearing and I am very hopeful that you will be able to show grace and please allow a new phone hearing to be rescheduled.

The Appeals Tribunal reset the case for hearing "to determine whether [Mr. Walker] had good cause for failing to participate"; evidence on the merits was also ordered to be taken.  The hearing occurred on December 4, 2018.

The only evidence on the question of Mr. Walker's receipt of the notices and his reason for missing one of them is set forth in the hearing transcript as follows:

4

Q. All right. Did you receive a copy of this notice in the mail?

A. Yes. I did.

Q. Did you call in to participate in that hearing?

A. No, I didn't.

Q. All right. Why didn't you call in for that hearing?

A. Because, uh, I deal with—I was confused about this, uh, the first package or the second package which I had called in at 12:30 but the one prior to that, I believe it was 1:15 I mean. I didn't—I called in at 1:15 but I didn't call in at 12:30 because I was confused and I deal with a mental illness and I just—I just got, uh, I was overwhelmed. This is my first time, uh, going through, uh, appeals or trying to get unemployment so I was just confused and it—it—it—it—I couldn't under—I really didn't understand what I needed—what I needed to do.

Q. So just to make sure I understand it. You said you had a 12:30 hearing and 1:15 hearing that day?

A. Yes, sir.

Q. Okay. As I'm looking through the, uh, this is the first packet, uh, which included your appeal documents at the end. That included a, uh, a determination about, um, uh, I think it was about, um, earnings, um about—about how you may have earned. Is that—was that what the other issue was?

A. Uh?

Q. The one you called in for. Do you remember what was discussed in that hearing?

A. I believe that one was because, uh, they wanted to determine if I was, uh, capable for, uh, uh, going—going back to work after I gave a doctor's note.

Q. Okay. All right. When the—the package you received, did you notice when you received them that they were two different hearing times?

A. No, sir.

5

Q. Okay. The hearing that you did call in for, was the employer a party to that hearing? Were they in that hearing?

A. No. No, sir.

Q. Okay. When did you realize you had missed the 12:30 hearing?

A. After, uh, I had my witness in the car and they—they told me to step out of the car and I—I stepped out of the car and I was talking to the, uh, Referee and then when he said that that's all he needed to know and I was wondering when I was going to be able to defend myself with Mr. Crawford and I—that was it. I didn't have the opportunity so I reckon I—I made a mistake.

Q. Okay. So—so I just want to be clear and I believe we asked this but I wasn't –I wasn't sure I understood it. When—when you received all the documents in the mail for the two hearings, uh, on—on November 5th, did you notice that they—they were two different notices with two different times?

A. No, sir. I—I only read, uh, the one at 1:15 and I made sure that I called in that day because that's the only one. I—I—I reckon I missed—I reckon the—the other one at 12:30.

Q. Okay. Is there anything else you want to tell me about your failure to participate in the previous hearing?

A. Uh, I—I was confused and with the type of work and documents because this is my first time going through it.

Q. Okay. I also want to ask, you mentioned, uh, a mental health issue and—and confusion. Is that confusion related to your mental health issues?

A. Yes, sir.

Q. Okay. So what—what is that mental health issue that caused your confusion?

A. I get—what I do is paranoid schizophrenic [sic] and a lot of times things just get confusing and I can't understand a lot of times what—what I supposed [sic] to be doing and, uh, it just a mental illness that I—I deal with.

Q. Okay. Again anything else you'd like to tell me, uh, for now just about the failure to participate in the previous hearing?

6

A.  No, sir.

The employer did not object to this testimony.

The Appeals Tribunal determined that Mr. Walker did not show good cause for failing to participate in the 12:30 p.m., November 5, 2018, hearing.  Without addressing the merits of the claim and basing its good-cause determination on two grounds, the tribunal stated, "[1] The claimant failed to provide any competent evidence to show that his mental health issues caused him to miss the hearing.  [2] The claimant admitted he had not read the notice.  It was the claimant's failure to read the notice, not any confusion, which prevented him from participating in the hearing."  Its conclusion regarding the lack of "competent" evidence was based on the tribunal's specific finding that "[t]he claimant did not present any medical evidence regarding his condition."  The Appeals Tribunal nevertheless prefaced that factual finding by stating, "[t]he claimant suffers from a mental health issue.  The claimant's condition sometimes causes him confusion."  It did not indicate that it did not believe Mr. Walker's testimony about his mental health and its effects on his life.  It did not make any finding about his testimony that the confusion caused by his mental health affected his cognitive ability to discern that he was required to participate in two hearings on November 5, 2018.

Mr. Walker appealed this ruling, asking for another opportunity to explain how his mental illness caused confusion and the inability to read some paperwork and to present the testimony of his case manager on this matter, once again providing the manager's contact information as well as the contact information for the manager's

7

supervisor. Adopting the decision of the Appeals Tribunal as its own, the Commission affirmed. Mr. Walker appeals.

## Legal Analysis

In the *pro se* brief, Mr. Walker seeks to address the merits of the unemployment compensation claim, which the Commission did not decide, but also contends that "the Commission erred in denying unemployment benefits to the appellant for missing a previous telephone hearing.[2] Due to the appellant's mental status he became confused and was unaware of what was required of him, causing him to miss his hearing." Thwarted in his attempt at this late date to introduce doctors' letters to the legal file,[3] a reply brief was filed on his behalf by a "friend of the court" including documents purporting to show that Mr. Walker (1) was seen and evaluated in a hospital emergency room before his two-day absence from work and (2) has been diagnosed with schizophrenia, which creates anxiety in certain situations and interferes with his ability to concentrate.

Under section 288.210, "Upon appeal no additional evidence shall be heard."[4] So any evidence outside the hearing record may not be considered in determining whether Mr. Walker showed good cause for failing to participate in the November 5, 2018, merits hearing. Our review is limited to the Commission's good-cause determination and to the following:

---

[2] Because the Commission's decision does not address the merits of Mr. Walker's appeal of the deputy's determination, this court may not consider the matter further.

[3] We denied the motion for evidence that Mr. Walker filed.

[4] Statutory references are to RSMo (2016) as supplemented, unless otherwise indicated.

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award. . . .

§ 288.210.  Further, "[t]he findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law."  § 288.210.  "We do not defer to the Commission's conclusions of law or its application of the law to the facts.  Additionally, where, as here the Commission adopts the decision of the Appeals Tribunal, we consider the Tribunal's decision to be the Commission's for purposes of our review."  *Mandacina v. Harrah's of N. Kansas City*, 512 S.W.3d 98, 101 (Mo. App. W.D. 2017) (citation omitted).  The Commission "has the right to pass upon the credibility of witnesses, but where the record reveals no conflict in the evidence or impeachment of any witness, the reviewing court may find the award was not based upon disbelief of the testimony of the witnesses."  *Corp v. Joplin Cement Co.*, 337 S.W.2d 252, 258-59 (Mo. banc 1960)  ("Where the evidentiary facts are not disputed, the award that should be entered by the Industrial Commission becomes a question of law and the Commission's conclusions are not binding on the appellate court.");  *see also Abt v. Miss. Lime Co.*, 388 S.W.3d 571, 578 (Mo. App. E.D. 2012) (quoting *Corp*);  *Peck v. LaMacchia Enters.*, 202 S.W.3d 77, 82 n.6 (Mo. App. W.D. 2006) ("[T]he Commission may not disregard or ignore

undisputed testimony of a witness not shown to have been impeached or disbelieved by the agency." (citation omitted)).[5]

"Good cause" is defined, for purposes of what must be shown when a claimant fails to appear at a hearing, as "those circumstances in which the party acted in good faith and reasonably under all the circumstances." MO. CODE REGS. ANN. tit. 8, §§ 10-5.010(2)(C) & 10-5.035(2)(B) (2018). This definition is the touchstone for our analysis, so our focus should be on why Mr. Walker missed the notice of the 12:30 p.m. hearing, i.e., whether, under the circumstances, the evidence showed that he acted in "good faith" and "reasonably."

When reviewing a good cause-based decision, "we determine whether the Commission abused its discretion in refusing to set aside the dismissal for failure to show good cause. Abuse of discretion is shown where the outcome is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Earth City Supply LLC v. Div. of Emp't Sec.*, 527 S.W.3d 92, 94 (Mo. App. W.D. 2017) (citations omitted). "We may not substitute our judgment on the evidence and when the evidence before the Commission would warrant either of two opposed findings, we are bound by the Commission's determination." *Wunderlich v. Jensen*, 496 S.W.3d 522, 527 (Mo. App. W.D. 2016).

---

[5] The Commission here did not indicate that it disbelieved Mr. Walker's testimony; rather, it stated that a lack of competent evidence, i.e., medical evidence, "to show that his mental health issues caused him to miss the hearing" and his admitted failure to read the notice prevented his participation. Although the Commission believed and found that Mr. Walker had mental health issues that sometimes caused him confusion, it unmoored that finding from his testimony that his condition made him unable to understand that he was required to call the Appeals Tribunal twice on November 5, 2018.

10

On the basis of Mr. Walker's hearing testimony, the Commission found that mental illness can cause him confusion. It also found that Mr. Walker received notification of two hearings that would be held back-to-back on a single day and "only read the notice for the 1:15 p.m. hearing," in which he duly participated. Because Mr. Walker had also received notice of the 12:30 p.m. hearing, but failed to read it, the Commission concluded that he did not demonstrate good cause for failing to participate in that hearing. Quoting *Flanigan v. City of Kansas City*, 926 S.W.2d 98, 102 (Mo. App. W.D. 1996), the Commission stated, "Although there are many forms of neuroses, nervous disorders, and manifestations of psychological illness, the existence of a diagnosis of illness does not necessarily excuse the individual from responsibility for actions." I do not find *Flanigan* particularly persuasive on the issue of whether Mr. Walker had good cause to miss the 12:30 p.m. hearing in that, unlike here, that case involved the claimant's eligibility for benefits and not whether the claimant's failure to participate in a merits hearing, under the circumstances, was a result of good faith and reasonable action. As well, in *Flanigan* we found, despite medical evidence in the record, that the Commission's denial of benefits was based on sufficient evidence showing that the claimant was not without some responsibility for her own workplace misconduct. *Id.* at 103.

The Commission's decision here is based on what it deemed Mr. Walker's failure to provide "*any* competent evidence" showing that his mental illness caused him to miss the hearing notice. Although the Commission accepted as competent, and apparently believed, Mr. Walker's testimony about the relationship between his mental illness and his confusion, the Commission focused on the statutes and

11

regulations concerning the evidentiary presumptions of hearing notices mailed to participants and on what it called his "admission" that "he had not read the notice" about the 12:30 p.m. hearing.[6] It apparently believed that the evidence did not show a link under these circumstances between Mr. Walker's confusion and his failure to read the notice. In this regard, I believe that the Commission improperly disregarded competent evidence in the record, i.e., Mr. Walker's unobjected-to and uncontradicted testimony that his failure to participate in the merits hearing was due to the confusion that mental illness causes in his life.[7] I have been unable to find case law indicating that medical evidence, which the Commission specifically noted was not presented, is required to show that a claimant acted in good faith and reasonably in failing to participate in an appeals hearing where a claimant's mental illness purportedly caused him to miss one of two hearing notices when the Division scheduled two hearings

---

[6] The Commission's characterization of Mr. Walker's testimony is not accurate. As indicated above, Mr. Walker testified that he had "missed" one of two notices for hearings scheduled on the same day. Missing a notice and not reading it may be two sides of the same coin, but, as discussed further below, it is all of the circumstances and whether a claimant takes affirmative action on receiving a notice of hearing that are determinative of a good-cause showing in cases involving a misreading of or failure to read a hearing notice.

[7] Mr. Walker's supervisor, Mr. Charles Crawford, participated in the good-cause part of the December 4, 2018, hearing. After Mr. Walker linked his mental illness with his confusion over the hearing documents and hence his failure to participate in the merits hearing, Mr. Crawford was asked if he had any questions for Mr. Walker regarding why he failed to participate in the November 5, 2018, hearing. Mr. Crawford's response was, "No, sir." Even hearsay evidence, unobjected-to during an administrative hearing, may "be considered as substantial and competent for purposes of the agency's findings." *Jenkins v. George Gipson Enters., LLC*, 326 S.W.3d 839, 842 (Mo. App. E.D. 2010); MO. CODE REGS. Tit. 8, § 10-5.015(10)(B)4 ("Any evidence received without objection which has probative value shall be considered by the hearing officer along with other evidence in the case[.]"). See also cases addressing "back-door" appellate sufficiency challenges to expert testimony whose admissibility has not been questioned during an administrative hearing. *Lacy v. Fed. Mogul*, 278 S.W.3d 691, 700 (Mo. App. S.D. 2009) (finding expert testimony admitted without objection competent, with credibility and weight for the Commission to assess). Here, the Commission made no finding as to the credibility or weight of Mr. Walker's testimony linking his mental illness and confusion with his failure to see the 12:30 p.m. hearing notice, nor did it even mention that testimony, thus supporting my conclusion that the Commission in fact improperly ignored it.

12

back-to-back on the same day.[8]  I am concerned that the Commission may henceforth require medical evidence in a good-faith hearing to support a claim that a mental-health problem led the claimant to act as he or she did.  This may raise the evidentiary bar too high for more than a few good-cause claimants.

The Commission here premised its ruling on a lack of competent evidence showing that Mr. Walker's mental illness caused him to miss seeing the 12:30 p.m. hearing notice.[9]  The uncontested, documentary evidence the Commission had before it, however, consisted of a record of disciplinary actions against Mr. Walker for coming in late, leaving early, or being absent from work; going to a work site when it was closed; and failing to follow instructions or cooperate with supervisors.  Mr. Walker testified about his paranoid schizophrenia and the effect it had on his life, including causing confusion and anxiety and making him unable to understand what he is supposed to do at different times, including understanding that two notices for two different hearings had been sent to him.  His testimony was uncontradicted and unimpeached, and the Commission did not indicate in any way either that it considered that evidence or did not believe him.  His testimony is also consistent with

---

[8] I understand that many Missouri courts have rejected a *compensation* award where the claimant fails to introduce medical evidence to support a claim that he or she had good cause to voluntarily terminate employment, unless the causal connection is within the common knowledge or experience of a layperson.  *See, e.g., Martin v. Div. of Emp't Sec.*, 460 S.W.3d 414, 419-20 (Mo. App. W.D. 2015).  I believe, however, that proof of good cause for missing a hearing is not the same as showing eligibility for unemployment-compensation benefits.

[9] To the extent that lack of medical evidence contributed to the Commission's decision, I seriously question whether any medical professional would testify to a reasonable degree of medical certainty that Mr. Walker's schizophrenia specifically interfered with his ability to discern on the day he received the hearing documents that he had two hearings to participate in on November 5, 2018.  Holding Mr. Walker to such proof to show good cause for missing a hearing under these circumstances does not comport with the liberal construction accorded to Missouri's employment security laws.  *Piloski v. Div. of Emp't Sec.*, 503 S.W.3d 253, 259 (Mo. App. W.D. 2016) (citing section 288.020).

13

his work record, and he submitted a statement with his request for reconsideration addressing his disability and diagnosis which he expressly linked to his confusion about the two hearings. The case notes as documented by the Appeals Tribunal for the 12:30 p.m. hearing reflect that Mr. Walker called in at 2:08 p.m. that day and said he did not know he was supposed to call in for the 12:30 hearing and "[c]laims to have a mental illness."

While our courts have deemed unreasonable a failure to read or to properly read a hearing notice, this is not a *per se* rule, as each case is assessed on its individual circumstances. We applied this principle in *Speed v. Division of Employment Security*, 402 S.W.3d 153 (Mo. App. W.D. 2013). The claimant there had called into the hearing about ten minutes too early, was disconnected after waiting on hold, and then tried to call in again six minutes after the scheduled time. *Id.* at 154. Her error, according to the Commission, was that she had not called in at exactly the correct time and thus had not made a good-faith effort to participate. *Id.* at 155. We reversed its good-cause determination, stating, "In some cases, although the claimant failed to follow the instructions on how to appear, good cause may still be shown for failing to appear when circumstances show claimant's 'affirmative efforts' to do so." *Id.* at 155 (citing *Miller v. Rehnquist Design & Build, Inc.*, 311 S.W.3d 382, 384, 385 (Mo. App. E.D. 2010); *Weirich v. Div. of Emp't Sec.*, 301 S.W.3d 571, 576 (Mo. App. W.D. 2010)). We further noted, "Cases in which failure to follow instructions resulted in affirming the Commission's decision that a claimant failed to show good cause generally showed *no* attempt by the claimant to be present at the hearing—no affirmative effort to appear." *Id.* (emphasis added). Here, Mr.

14

Walker had arranged for a witness to participate in the November 5, 2018, hearing and called in at 1:15 p.m., believing that this would be his opportunity to defend any assertions that the employer would make about the circumstances leading to his termination. His failure to see a second hearing notice or understand that he had to call in twice on November 5, 2018, was due, according to uncontested testimony, to the mental health issue that causes him confusion. Contrast these circumstances with those in *Jenkins v. Manpower on Site at Proctor & Gamble*, 106 S.W.3d 620, 625 (Mo. App. W.D. 2003), where we upheld the Commission's decision to dismiss an appeal for lack of good cause where a claimant asserted that he failed to participate in his telephone hearing because he did not read the hearing notice properly. In fact, Mr. Jenkins had testified that he failed to read the notice properly because "I guess I was also busy reading my other mail." *Id.*

Although it is unclear on this record whether the notices for the two hearings arrived in a single mailing, the record shows that Mr. Walker and a witness participated in the 1:15 p.m. hearing that day, and he tried to rectify the mistake about the 12:30 p.m. hearing immediately.[10] No reason other than the confusion caused by mental illness can possibly explain why Mr. Walker would have called into one hearing but not the other. And this writer must confess that in twenty years on the bench, I have never before come across a case involving two hearings scheduled by the Commission on the same day.

---

[10] I would note that packets relating to the November 5 and December 4 hearings reviewed by the referee and admitted during the evidentiary hearing include duplicate documents, are scrambled in the legal record on appeal, and do not include anything relating to the 1:15 p.m. hearing. If the Commission cannot put together a coherent record, it is unreasonable to expect an individual with paranoid schizophrenia manifesting in confusion and anxiety to fully understand that record and comply with its requirements.

I believe that the Commission abused its discretion and improperly disregarded competent evidence in not concluding that Mr. Walker's mental illness caused the confusion that resulted in missing the notice for the 12:30 p.m. hearing, particularly where he had two hearings within forty-five minutes on the same day and participated with a witness in one of them thus demonstrating an affirmative effort to comply with the meeting notices. I would also find that the Commission erred by misconstruing Mr. Walker's testimony and separating the failure to focus on, read, and understand the merits-hearing notice from the mental illness that he testified interfered with this cognitive ability to do so. Mr. Walker met his burden of showing that he acted in good faith and reasonably under the circumstances and thus had good cause for missing the November 5, 2018, 12:30 p.m. merits hearing. I would grant this point and reverse and remand for the Commission to direct the Appeals Tribunal to make a determination on the merits of Mr. Walker's appeal.

/s/ *Thomas H. Newton*
Thomas H. Newton, Presiding Judge